| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL III | | |
| CUSTOM GROUP, LLC.<br><br>Parte Recurrente<br><br>v.<br><br>JUNTA DE SUBASTA DEL DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO; DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO<br><br>Parte Recurrida<br><br>HEARTLAND ENERGY PARTNERS, LLC; HUNT, GUILLOT AND ASSOCIATES, LLC<br><br>Licitadores Agraciados<br><br>BMA GROUP, LLC AND ASUBSIDIARIES; TETRA TECH, INC.; HAGERTY CONSULTING, INC.; NAVARRO RESEARCH AND ENGINEERING, INC.; INNOVATIVE EMERGENCY MANAGEMENT, INC,; SHARETECH GROUP ENGINEERING PSC<br><br>Licitadores No Agraciados | KLRA202400553 consolidado con KLRA202400556 | *Revisión Judicial,* procedente de la Junta de Subastas del Departamento de la Vivienda de Puerto Rico<br><br>RFP Núm.: CDGB-DRMIT-RFP-2024-03<br><br><br>Sobre:<br>Request for Proposal for Program Management Services for FEMA Match Programs CDBG-DR, CDBG-MIT, NFMP, ER1 and HMGP |
| INNOVATIVE EMERGENCY MANAGEMENT, INC.<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO; JUNTA DE SUBASTAS DEL DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO<br><br>Parte Recurrida<br><br>HEARTLAND ENERGY PARTNERS, LLC; HUNT, GUILLOT AND ASSOCIATES, LLC<br><br>Proponente Agraciado | | *Revisión Judicial,* procedente de la Junta de Subastas del Departamento de la Vivienda de Puerto Rico<br><br>RFP Núm.: CDBG-DRMIT-RFP-2024-03<br><br><br>Sobre:<br>Program Management Services for FEMA Match Programs |

Número Identificador
SEN2024_____

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de octubre de 2024.

Compareció ante este Tribunal la parte recurrente, Custom Group, LLC (en adelante, "Custom"), mediante un recurso de revisión judicial presentado el 8 de octubre de 2024, bajo el alfanumérico KLRA202400553, e Innovative Emergency Management (en adelante, "Innovative") (en conjunto, los "Recurrentes") por vía de otro recurso de revisión judicial presentado en la misma fecha, caso núm. KLRA202400556. Nos solicitaron la revocación de la determinación emitida por la Junta de Subastas del Departamento de Vivienda de Puerto Rico (en adelante, la "Junta") el 19 de septiembre de 2024. Mediante el referido dictamen, la Junta adjudicó la buena pro del RFP-2024-03 a las entidades Hunt, Guillot and Associates, LLC (en adelante, "Hunt") y a Heartland Energy Partners (en adelante, "Heartland"). Ante la realidad de que en ambos recursos se impugna la misma decisión administrativa y en aras de evitar adjudicaciones incompatibles, ordenamos la consolidación de los recursos de revisión judicial el 9 de octubre de 2024, bajo los siguientes alfanuméricos: KLRA202400553 y KLRA202400556.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

**I.**

Los recursos de revisión judicial de epígrafe se remontan al 7 de marzo de 2024, fecha en que la Junta emitió el Requerimiento de Propuestas (RFP) núm. CDBG-DRMIT-RFP-2024-03 para la adquisición de servicios de seguro y manejo de riesgos para el Programa de Subvención en Bloque para el Desarrollo Comunitario para la Recuperación ante Desastres (en adelante, "CDBG-DR") y el Programa de Subvención en Bloque para el Desarrollo Comunitario para mitigación (en adelante, "CDBG-MIT"). En respuesta a ello, y como parte al proceso de licitación, la Junta recibió nueve (9) propuestas, incluyendo las de los Recurrentes. Los

criterios que se tomaron en consideración al examinar los referidos escritos fueron los siguientes: (1) calificaciones y experiencia del proponente, (2) calidad del enfoque propuesto y su relevancia para los servicios, (3) cualificaciones profesionales y experiencia del personal, (4) capacidad del personal para dedicarle el tiempo necesario a los servicios para realizarlos adecuadamente, (5) estabilidad financiera del proponente y (6) razonabilidad del precio de los servicios.[1]

Tras culminar el proceso de evaluación de las propuestas, el 19 de septiembre de 2024, la Junta emitió una notificación de adjudicación mediante la cual determinó que Hagerty Consulting, Inc, Heartland, Hunt, Innovative y Custom estaban altamente cualificados, mientras que Tetra Tech, Inc. y Navarro Research and Engineering, Inc. estaban cualificados y BMA Group, LLC and Subsidiaries y ShareTech Group Engineering, PSC no eran proponentes cualificados. En relación con las propuestas catalogadas como altamente cualificadas, expresó lo siguiente:

> Heartland Energy Partners, LLC (Heartland) was ranked as Highly Qualified. The Proposer passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Good in the critical criterion of Qualifications and the Experience of the Proposer to Successfully Perform the Services required. In the critical criteria of Quality of the Proposed Approach and its relevance to the Services described and in the Professional Qualifications and Specialized Experience of the Proposed Key Personnel, Heartland received a rating of Excellent. In the important criterion of the Capacity of the Key Personnel and the ABILITY TO Commit adequate time to effectively perform the services in the role assigned within the required timeframe, Heartland received a rating of Excellent. The Proposer received a pass rating in the criterion of financial stability. In summary, the Proposer provided a coordinated approach to assist in the implementation and administration of the FEMA Match Programs, they proposed two additional project managers and project coordinators capable of assisting with the Programs (NFMP, HMGP, ER1). Also, the key personnel selected by the Proposer comply with all the requirements specified in the Scope of Services and exceed the years of experience for the roles established in this RFP. Given the above, the EC ranked Heartland as Highly Qualified.[2]

> [...]

> Innovative Emergency Management, Inc (IEM) was ranked as Highly Wualified. IEM passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, IEM reveiced a rating of Excellent in the critical criteria of qualifications and experience of the proposer to

---

[1] *Véase*, Apéndice del Recurso de Revisión Judicial, caso núm. KLRA20240556, pág. 28.
[2] *Véase*, Apéndice del Recurso de Revisión Judicial, caso núm. KLRA20240556, pág. 12.

successfully the services required, quality of the proposed approach and its relevance to the service described in this RFP, and professional qualifications and specialized experience of the proposed key personnel. The proposer demonstrated their extensive knowledge working with CDBG funds, working with PRDOH on the CDBG-DR Non-Federal Match Programs. Their staff is highly qualified and demonstrated in their resumes their extensive knowledge and expertise of what the programs, NFMP, HMGP and ER1 are requiring. In the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, IEM also received a rating of Excellent. The proposer received a Pass rating in the criteria of financial stability. In summary, the Proposer has worked with PRDOH providing similar services under the CDBG-DR Non-Federal Match Program. Their proposed key personnel exceed the requirements established in the RFP. Given the above, the EC ranked IEM as Highly Qualified.[3]

[…]

Hunt, Guillot and Associates, LLC (HGA) was ranked as Highly Qualified. The Proposer passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criteria of professional qualifications and the experience of the proposer to successfully perform the services required, quality of the proposed approach and its relevance to the services described in this RF, and in professional qualifications and specialized experience of the proposed key staff. In the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required time frame, the Proposer received a rating of Excellent also. HGA received a Pass rating in the criteria of financial stability, capacity of the entity to provide the services. The Proposer has worked with various CDBG funded projects, FEMA and has extensive knowledge of HUD regulations. Their proposed key staff exceeds the requirements of this RFP and the Proposer presented additional staff available, if needed. Given the above, the EX ranked HGA as Highly Qualified.[4]

Custom Group, LLC (Custom) was ranked as Highly Qualified. The Proposer passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criteria of professional qualifications and the experience of the proposer to successfully perform the services required, quality of the proposed approach and its relevance to the services described in this RF, and in professional qualifications and specialized experience of the proposed key staff. In the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent also. Custom received a Pass rating in the criteria of financial stability, capacity of the entity to provide the services. The Proposer has vast experience with federal and local regulations, along with experience with FEMA PA projects and large budgeted infrastructure projects, as required

---

[3] *Véase*, Apéndice del Recurso de Revisión Judicial, caso núm. KLRA20240556, pág. 13.
[4] *Véase*, Apéndice del Recurso de Revisión Judicial, caso núm. KLRA20240556, págs. 13 y 14.

in this RFP. Custom exceeded providing a detailed a Challenges/ Solutions chart listing possible missteps they would encounter during the process and how would they approach each one. Based on the above, the EC ranked Custom as Highly Qualified.[5]

A tenor con lo anterior, adjudicó el RFP-2024-03 a Heartland por la cantidad de $14,071,446.06 y a Hunt por la suma de $11,997,743.94, ambos por el término de tres (3) años con la opción de ser extendidos dos (2) veces por el lapso de un año.[6] Inconforme con esta decisión, el 8 de octubre de 2024, Custom acudió ante este Tribunal mediante recurso de revisión judicial bajo el alfanumérico KLRA20240553, en el que señaló el siguiente error:

**PRIMER ERROR: ERRÓ LA JUNTA DE SUBASTA AL NO ADJUDICARLE LA BUENA PRO A LA PARTE RECURRENTE A PESAR DE QUE CUSTOM GROUP, LLC FIGURÓ COMO EL LICITADOR QUE SOBREPASÓ LAS EXPECTATIVAS DE LA AGENCIA EN EL CUMPLIMIENTO CON LOS TÉRMINOS Y CONDICIONES DEL RFP Y E REGLAMENTO, CONVIRTIENDOSE EN LA OPCIÓN MÁS BENEFICIOSA AL INTERÉS PÚBLICO Y DE LA AGENCIA EN OBTENER EL SERVICIO SOLICITADO A LA MEJOR CALIDAD POSIBLE Y EL PRECIO MÁS RAZONABLE EN SU TOTALIDAD, EVITANDO LOS RIESGOS DE INCUMPLIMIENTO**.

En esa misma fecha, Innovative presentó otro recurso de revisión judicial ante nos, bajo el alfanumérico KLRA20240556, mediante el cual le imputó al foro primario la comisión de los siguientes errores:

**PRIMER ERROR:**

**ERR[Ó] EL COMITÉ Y LA JUNTA DE SUBASTAS AL CONCLUIR QUE IEM NO HAB[Í]a SOMETIDO LA INFORMACI[Ó]N SOLICITADA SOBRE CONTRATOS ACTIVOS Y POR CONSIGUIENTE DESCALIFICARLA.**

**SEGUNDO ERROR:**

**ERRÓ EL COMITÉ EVALUADOR Y LA JUNTA DE SUBASTAS AL NO IDENTIFICAR QUE LA INFORMACIÓN SOLICITADA SOBRE CONTRATOS ACTIVOS YA HAB[Í]A SIDO SOMETIDA COMO PARTE DE LA PROPUESTA**.

El 21 de octubre de 2024, compareció el Departamento de la Vivienda mediante "**Alegato en Oposición a Recursos Consolidados**".

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

---

[5] *Véase*, Apéndice del Recurso de Revisión Judicial, caso núm. KLRA20240556, pág. 14.
[6] *Véase*, Apéndice del Recurso de Revisión Judicial, caso núm. KLRA20240556, pág. 3.

## II.

## A.

La Ley Núm. 73-2019, según enmendada, conocida como "Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019", 3 LPRA sec. 9831 (en adelante, "Ley Núm. 73-2019"), fue promulgada con el propósito de regir los procesos de compras y subastas de bienes, obras y servicios no profesionales en todas las Entidades Gubernamentales y las Entidades Exentas. En detalle, el Artículo 31 reconoce varios métodos de licitación en Puerto Rico, entre los cuales se incluyen la: (1) Subasta Formal y el (2) Requerimiento de Propuestas. 3 LPRA sec. 9834g. Ambas modalidades de licitación son utilizadas por el Estado para adquirir sus bienes y servicios. Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras, 213 DPR ___ (2024), 2024 TSPR 82. Cabe resaltar que dichos procedimientos están revestidos de un alto interés público debido que la adjudicación de una subasta gubernamental implica el desembolso de fondos del erario. Caribbean Communications v. Pol. de PR, 176 DPR 978, 994 (2009). De manera que ambos métodos de licitación tienen la finalidad de "proteger el erario, al fomentar la libre y diáfana competencia entre el mayor número de licitadores posibles". Puerto Rico Asphalt v. Junta, 203 DPR 734, 737 (2019). Con ello, también se procura conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". PR Eco Park *et al* v. Mun. De Yauco, 202 DPR 525, 531 (2019).

Particularmente, el Artículo 31 (c) de la Ley Núm. 73-2019, *supra*, define la **Subasta Formal** como aquel:

> Método de licitación a ser utilizado cuando se adquieran bienes, obras y servicios no profesionales cuyo costo exceda la cantidad de doscientos cincuenta mil dólares ($250,000.00). Dicha adjudicación será realizada por la Junta de Subasta al licitar responsivo que haya ofertado el mejor valor. 3 LPRA sec. 9834g(c).

En cambio, el Artículo 31 (d) de la Ley Núm. 73-2019, *supra*, define el **Requerimiento de Propuestas**, conocido como *Request for Proposal*

*(RFP),* como aquel *"*[m]étodo de licitación a ser utilizado para adquirir bienes, obras y servicios no profesionales que admite la negociación entre el oferente y la Administración, mientras se evalúan las propuestas recibidas". 3 LPRA sec. 9834g(d). Además, detalla lo siguiente:

> El RFP permite la compra negociada y confiere a los licitadores la oportunidad de revisar y modificar sus ofertas antes de la adjudicación de la buena pro; la Administración podrá solicitar de los licitadores la presentación de su mejor y final oferta. El RFP debe contener los parámetros que se utilizarán para la adjudicación del contrato. Es decir, los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta. La fase de negociación no creará un derecho adquirido entre las partes. Íd.

La referida legislación reconoce **dos (2) tipos de Requerimiento de Propuesta** para llevar a cabo el proceso de licitación, a saber: (a) **Solicitud de Propuestas** y (b) **Solicitud de Propuesta Selladas**. Primero, el método de licitación denominado **Solicitud de Propuestas** es aquel donde "el costo de los bienes, obras y servicios no profesionales no excede la cuantía de doscientos cincuenta mil dólares ($250,000.00)". Íd. Segundo, se considera que el método de licitación denominado **Solicitud de Propuestas Selladas** es aquel donde "el costo de los bienes, obras y servicios no profesionales excede la cuantía de doscientos cincuenta mil dólares ($250,000.00)". Íd.

Sin considerar el método de licitación que se lleve a cabo, nuestro más alto foro ha expresado que **las agencias administrativas están facultadas para adoptar las normas de su propio procedimiento de adjudicación de subasta y, además, cuentan con una amplia discreción para evaluar las propuestas sometidas ante su consideración**. Caribbean Communications v. Pol. de PR, *supra,* págs. 993-994, 1006. Lo anterior se debe a que estas poseen un extenso conocimiento y especialización que las sitúa en una mejor posición que el foro judicial para seleccionar al postor más conveniente para el interés público. Íd., pág. 1006.

En cuanto a los costos de los bienes o servicios objeto de subasta, el Gobierno debe velar porque las obras se realicen al menor precio posible. Maranello *et al.* v. O.A.T., 186 DPR 780, 789 (2012). No obstante lo anterior, la junta de subastas de la agencia correspondiente debe considerar otros criterios al momento de adjudicar la subasta, tales como: (1) el cumplimiento

de las propuestas con las especificaciones de la agencia; (2) la capacidad del postor para realizar y cumplir con el contrato y (3) la reputación e integridad comercial. Íd. Finalmente, ya sea que se trate de un procedimiento de subasta formal o de un requerimiento de propuestas, **una vez adjudicada la buena pro, los tribunales no debemos sustituir el criterio de la agencia o de la junta concerniente, salvo que se pruebe que la determinación fue tomada de manera arbitraria, caprichosa, o que hubo fraude o mala fe**. Caribbean Communications v. Pol. de PR, *supra*, pág. 1006.

**B.**

Mediante la aprobación del Reglamento Núm. 9506 de 25 de septiembre de 2023 del Departamento de la Vivienda de Puerto, conocido como el "Manual de Adquisiciones para los Programas CDBG-DR, CDBG-MIT y CDBG Estatal" (en adelante, "Reglamento Núm. 9506"), dicha entidad gubernamental estableció los estándares en el proceso de adquisición de bienes, suministros, equipo, construcción, ingeniería, arquitectura, u otros servicios profesionales y no profesionales para los Programas de la Subvención en Bloque para Desarrollo Comunitario - Recuperación ante Desastres (Programas CDBG-DR o CDBG-DR), el Programa de Subvención en Bloque para Desarrollo Comunitario - Mitigación (Programas CDBG-MIT o CDBG-MIT) y del Programa de Subvención en Bloque para Desarrollo Comunitario Estatal (Programas CDBG Estatal o CDBG Estatal). Reglamento Núm. 9506 de 25 de septiembre de 2023, *supra*, Art. I, Sec. 1.4. La adopción de dicho cuerpo reglamentario obedeció al interés de promover una competencia plena y justa a todas las personas y entidades que participaran de dichos programas de subvención. Íd.

En detalle, el Reglamento Núm. 9506 define una solicitud de propuestas o RFP como una manera de convocatoria utilizada con métodos competitivos de adquisición. Íd., Art. II, Sec. 2.1 (aaa). Por ello, la evaluación de las propuestas y la selección de los proponentes deberá estar cimentada en criterios de evaluación y factores de adjudicación que tienen que estar detallados en el RFP. Íd. "La adjudicación del contrato se basa en la mejor

propuesta que cumpla con los requisitos del alcance de trabajo que resulte en el mayor beneficio y el mejor valor a[l Departamento de la] Vivienda, lo cual puede que no se determine principalmente sobre la base del precio". Íd.

Ello es así, puesto que el contrato deberá adjudicarse a favor del proponente que cumpla con dichos criterios de evaluación y cuyo historial de competencia y cumplimiento "convenza a la Junta de Subastas de su capacidad para satisfacer los términos del posible contrato. Aunque es uno de los factores determinantes, la adjudicación no debe hacerse únicamente a base de la oferta con el precio más bajo". Íd., Art. V, Sec. 5.1 (2). Así pues, durante el proceso de adjudicación, el Departamento de la Vivienda deberá siempre asegurarse que el costo o precio sea razonable bajo los métodos identificados en el Reglamento Núm. 9506 y de conformidad con una serie de factores técnicos. Íd., Art. X, Sec. 10.6.1 (b) y (e).

**III.**

En el presente caso, los Recurrentes nos solicitaron la revocación de la determinación de la Junta, a través de la cual se le adjudicó la buena pro del RFP-2024-03 a las empresas Hunt y Heartland.

Surge del expediente ante nuestra consideración, que el 7 de marzo de 2024 la Junta emitió el Requerimiento de Propuestas (RFP) núm. CDBG-DRMIT-RFP-2024-04 para la adquisición de servicios de seguro y manejo de riesgos para ciertos programas. En atención a ello, esta recibió nueve propuestas, incluyendo las de Custom e Innovative. Respecto al costo de los servicios a brindarse, la Junta estimó que su valor aproximado es de $26,069,190.00.[7] Heartland propuso el precio de $20,466.386.32, lo que representa un descuento del 30% sobre el costo estimado; Hunt valoró su servicio en la cantidad de $23,487,360.00, equivalente a un 13% menos, Innovative propuso una cantidad de $20,549,193.92, lo que implica un descuento de 26% y Custom propuso la suma de $25,877.258.94, es decir un 5% menos, todos calculados a partir del costo estimado provisto por la Junta.

---

[7] *Véase*, Apéndice del Recurso de Revisión Judicial, caso núm. KLRA20240556, pág. 16.

Durante el proceso de evaluación, el Área Programática del Departamento de la Vivienda requirió información acerca de los contratos activos de cada proponente vinculados al manejo de fondos de recuperación de desastres para detectar cualquier posible conflicto de interés que pudiese surgir al prestar los servicios del RFP en cuestión. A tenor con lo anterior, el 6 de junio de 2024, la Junta les solicitó a los proponentes clarificar los siguientes asuntos:

- Which of your subcontractors will provide services under this contract?
- Which of your clients have current projects with FEMA, LUMA, and COR3?
- Which are your clients with current infrastructure projects submitted to CDBG-DR and CDBG-MIT?[8]

Así las cosas, el 19 de septiembre de 2024, la referida Junta emitió un "**Notice of Award**" en el que adjudicó los contratos a las compañías Hunt y Heartland, tras determinar que éstas eran altamente competentes y que cumplían satisfactoriamente con los criterios exigidos. Además de eso, catalogó a los Recurrentes como altamente calificables. En específico, concluyó que Custom e Innovative obtuvieron excelentes resultados en los criterios evaluados. No obstante lo anterior, indicó que Innovative no presentó la información requerida en las mencionadas preguntas, lo que impidió que se completara su evaluación. Las controversias ante nos, se suscitan de estos hechos.

En el caso núm. KLRA202400553, Custom plantea que la Junta erró al no adjudicarle la buena pro a pesar de que figuró como el licitador que sobrepasó las expectativas de la agencia en el cumplimiento de los términos y condiciones del RFP y del Reglamento aplicable. Además, sostiene que el hecho de que la oferta de Heartland estuviera a un 30% por debajo del valor estimado de los servicios, es una razón válida para descartar dicha propuesta, pues "crea una preocupación real y alarmante de la capacidad que tiene el proponente en realizar los servicios de manera efectiva"[9] y porque conllevaría "un riesgo mayor en la desviación[,] en la exactitud,

---

[8] *Véase*, Apéndice del Recurso de Revisión Judicial, caso núm. KLRA20240556, pág. 15.
[9] *Véase*, Recurso de Revisión Judicial, caso núm. KLRA202400553, pág. 17.

tiempo y finalización de[l] proyecto"[10]. Por su parte, en el caso núm. KLRA20240556, Innovative argumenta que la Junta erró al descalificarla por concluir que no había sometido la información solicitada sobre contratos activo. No nos convencen las posturas de los Recurrentes. Veamos.

Conforme hemos adelantado en los acápites anteriores, un requerimiento de propuestas es un método de licitación utilizado para la adquisición de bienes, obras y servicios no profesionales, que permite la negociación entre el oferente y la agencia administrativa durante la evaluación de las propuestas recibidas. 3 LPRA sec. 9834g(d). Este procedimiento reviste de un gran interés público, ya que involucra el uso de fondos provenientes del erario público. Caribbean Communications v. Pol. de PR, *supra*, pág. 994. Así pues, las agencias administrativas están habilitadas para establecer las normas de su propio procedimiento de adjudicación y disponen de una considerable discreción al evaluar las propuestas que se someten a su consideración. Íd., págs. 993-994. Esto pues, las agencias son las que poseen el conocimiento especializado en los asuntos que adjudican, y no los tribunales, lo que las coloca en una mejor posición para seleccionar al postor más idóneo. En consonancia con lo anterior, una vez adjudicada la buena pro, los tribunales no debemos reemplazar el criterio de la junta en cuestión, a menos que se demuestre que la determinación fue tomada de manera arbitraria, caprichosa, fraudulentamente o de mala fe. Íd., pág. 1006.

Tras un análisis exhaustivo y riguroso del expediente ante nuestra consideración, incluyendo el RFP, la determinación de la Junta y las correspondientes propuestas, hemos arribado a la conclusión de que el Departamento de Vivienda no abusó de su discreción al adjudicar el RFP-2024-03. Nótese que Heartland y Hunt demostraron ante la Junta que poseen las capacidades necesarias para llevar a cabo los servicios solicitados y cumplieron de manera efectiva con todos los criterios evaluados. Por tal razón, la Junta, basándose en su conocimiento

---

[10] *Véase*, Recurso de Revisión Judicial, caso núm. KLRA202400553, pág. 18.

especializado, concluyó que estas dos entidades representan las opciones más favorables como proponentes.

Cabe reiterar que, aunque el Gobierno debe velar porque las obras se realicen al menor precio posible, este no debe ser el único criterio por considerarse. Conforme el Reglamento Núm. 9506 y el estado de derecho aplicable, si bien el precio es uno de los factores importantes en la adjudicación de este tipo de proceso competitivo, existen otra serie de criterios técnicos enmarcados en la pericia de la agencia que deben evaluarse. Así pues, notamos que este no fue el único criterio evaluado por la Junta, ya que también tomó en cuenta los siguientes aspectos: (1) calificaciones y experiencia del proponente, (2) calidad del enfoque propuesto y su relevancia para los servicios, (3) cualificaciones profesionales y experiencia del personal, (4) capacidad del personal para dedicarle el tiempo necesario a los servicios para realizarlos adecuadamente, (5) estabilidad financiera del proponente y (6) razonabilidad del precio de los servicios. Lo anterior implica que, al adjudicar el requerimiento a Heartland, la Junta no se basó exclusivamente en su atractiva oferta, que representaba un 30% del precio estimado, sino que analizó otros factores y consideró que, en comparación con las demás propuestas, tanto ésta como la de Hunt, eran las más convenientes.

Por otro lado, el hecho de que la propuesta sea la más económica no implica necesariamente que los servicios que se ofrecerán serán deficientes o representen un riesgo para la agencia. Aceptar esta lógica sería incurrir en meras especulaciones que no contribuyen a la base de nuestra función revisora de este tipo de proceso administrativo.

Por último, y de conformidad con lo planteado en el recurso núm. KLRA202400556, independientemente de si las preguntas formuladas por la Junta fueron debidamente respondidas, el hecho de que Innovative haya presentado la segunda oferta más económica no aseguraba que su propuesta fuera aceptada en lugar de la Hunt, ni implica que la Junta incurrió en un error al llevar a cabo dicha adjudicación. De hecho, se ha resuelto reiteradamente que el precio propuesto para rendir los servicios es un factor

determinante, pero no es el único que se toma en consideración en este tipo de procedimiento administrativo. Además de lo anterior, tal y como lo mencionó el Departamento de la Vivienda en su alegato en oposición, la adjudicación del contrato a favor de Innovative hubiera podido representar un posible conflicto de interés derivado de contratos vigentes que este último tenía con FEMA, LUMA, la Autoridad de Acueductos y Alcantarillados y la Autoridad de Energía Eléctrica. Ello, pues, el Departamento de la Vivienda tiene la responsabilidad de proteger el interés público, el erario y garantizar que los fondos federales se administren de manera efectiva y sin comprometer su integridad. En otras palabras, a pesar de que Innovative hubiera suministrado la información requerida por la agencia sobre sus contratos activos, dicha realidad, de por sí, representaba un riesgo inaceptable para la adecuada asignación de los fondos en cuestión.

En conclusión, dado a que del legajo apelativo no se desprende que la determinación de la Junta fue tomada de manera arbitraria, caprichosa, fraudulentamente o de mala fe, corresponde que confirmemos su decisión. Resolver lo contrario implicaría sustituir el conocimiento especializado de la Junta, lo que contraviene nuestro ordenamiento legal. Por todo lo anterior, no se cometieron los errores esgrimidos por los Recurrentes.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *confirmamos* la determinación emitida por la Junta.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones